it is recognized by all our elementary writers ; by our ablest judges ; (*h*) and is consonant with the soundest maxims of justice and morality.

BY THE COURT, unanimously,

The judgment was affirmed.

(*h*) 3 *Term Rep.* 51.   1 *East* 318.   2 *East* 92.

## Bulkley *v.* Starr.

### In the Court below,

JONATHAN STARR,  GUY RICHARDS,  NATHANIEL RICH-
ARDS,  GEORGE HALLAM,  ROBERT HALLAM,  JARED
STARR,  JANE STEWART,  WILLIAM WINTHROP,  JOSEPH
HOWLAND,  BENJAMIN BUTLER, and GEORGE D. AVERY,
*Petitioners* ; CHAUNCEY BULKLEY, *Respondent.*

In the Supreme Court of Errors, a plea in abatement will not be received after the third day of the term.

Where it appeared, that some of the defendants lived out of the State, to whom no actual notice had been given, and on whom no

ON *Wednesday* of the second week of the term, *Goddard*, for the defendants in error, moved for leave to enter a plea in abatement, on the ground of defective service.

*Daggett*, for the plaintiff in error, contended, that it came too late, and could not be received.   In the *County* Courts, pleas in abatement are required *by statute*, (*a*) to be made before the impanelling of the jury ; which is on the third day of the term.   The Superior Court have adopted the same rule ; and though this Court have not expressly adopted any rule, the practice has always been to give in such pleas within the three first days of the term.   From the *na-*

(*a*) *Stat.* 342. *edit.* 1796

service had been made, otherwise than by leaving a copy with their attorney here ; and no plea in abatement had been entered in season ; the Court refused to erase the case from the docket.

*ture* of the plea, which is, that the cause should not pro-
ceed, it ought to be given in at an early day.

*Goddard*, in reply, insisted, that according to the course
of practice before this Court, it would be very inconvenient
to require, in a cause standing late in the docket, a plea in
abatement to be entered at the commencement of the term.
At any rate, the Court will not proceed to hear the cause,
unless it appears to have been legally served. The question
as to the legality of the service may as well be made on a
plea in abatement, as in any other mode.

BY THE COURT. The plea cannot be received.

*Goddard* afterwards moved the Court to erase the cause
from the docket. It appeared, that some of the defendants
lived out of the State, to whom no actual notice had been
given, and on whom no service had been made, otherwise
than by leaving a copy with *Lyman Law*, Esq. their attor-
ney. He contended, that as this was neither conformable
to any statute prescribing the mode of service, nor to the
rule of 1804, it was a nullity, and no proceedings could be
had in the cause.

*Daggett*, contra. At most, the service is defective. But
defective service cannot be taken advantage of, except upon
a plea in abatement.

THE COURT overruled the motion to erase ; and ordered
the parties to proceed in the cause

## *On the merits.*

It was an aplication in chancery, for the interposition of
that Court to set aside an award.

Several un-
derwriters
of the same
policy may
join in a bill
in chancery
against the
insured.

An award obtained by false and fraudulent statements of a party, may be set
aside in chancery. That the party complaining of such award assented to the
admission of such statements before the arbitrators, shall not preclude him from
proving the same to be false and fruadulent, on a bill in chancery for relief against
the award.

Y y y

The petition stated, that the respondent, being owner of a cargo on board the brig *Polly*, bound on a voyage from Havanna to New-York, and being desirous of having the same insured, applied, on the 13th of April, 1798, to the petitioners and *William Stewart* to insure thereon the sum of $ 3,000, and declared, that he was wholly ignorant of the state and condition of the vessel, and offered them a premium of *seventy five per cent.*    On this representation, believing the same to be fair, they immediately made out and delivered to the respondent a policy for that sum ; which was signed by all the underwriters, but a distinct sum, part of said aggregate, was placed against the name of each.    On the next day, it was publicly known, that the brig and her cargo had been lost more than twenty days before ; and the petitioners, suspecting that the respondent knew, and had fraudulently suppressed the fact, refused to pay the loss ; upon which it was mutually agreed by the parties, that the subject matter of the policy, and whether the underwriters were liable thereon as for a total loss, should be referred to the decision and arbitrament of *Stephen T. Hosmer*, and *Samuel W. Dana*, Esquires.    In pursuance of this agreement, the parties afterwards appeared before the arbitrators ; the respondent offered himself as a witness, and, with the assent of the petitioners, solemnly stated, without oath, that he had no knowledge or information of the loss of said brig and cargo, before or at the time of the execution of the policy, and that the same was made fairly ; and on this asseveration solely, the arbitrators awarded in favour of the respondent, against the petitioners, as for a total loss on the policy ; which, being liquidated by the arbitrators, the petitioners accordingly paid to the respondent.

The petition then stated, that after the payment of the money, the petitioners discovered clear and positive evidence, which they knew not of, either at the time of underwriting, at the time of the submission and hearing before the arbitrators, or at the time of paying the money, al-

though they used every exertion to obtain the same, being fully confident of its existence somewhere, that on the day before said policy was executed, the respondent received and read a letter containing information of the loss of the brig.

1807.

BULKLEY
*v.*
STARR.

The respondent denied the truth of the facts stated in the petition.

The Superior Court found the facts as stated ; and set aside the award.

On the trial of this petition, the petitioners, to prove the allegations therein contained, offered in evidence a policy, a submission and award, and a receipt for the payment of the money ; which were objected to, by the respondent, on the ground of irrelevancy.

The policy was in the usual form, beginning as follows : " By this policy of assurance, Mr. *Chauncey Bulkley*, by " Captain *Stephen Griffith*, as well in his own name, as for " and in the name and names of all and every other person " or persons, to whom the same doth, may, or shall apper- " tain, in part, or in all, do make assurance, and cause him " and them, and every of them, to be insured, lost or not lost, " the sum of *three thousand dollars* upon the cargo of the " brigantine *Polly* of Chatham, from Havannah to New-York, " against capture," &c. At the end of the policy was this clause : " In witness whereof, we the assurers, have sub- " scribed our names, and sums assured, in New-London, " the 13th day of April, 1798" ; and then followed the names of the petitioners, with a distinct sum annexed to each, making in the whole $ 3,000.

The submission was in this form : " We the subscribers, " hereby agree, that *Stephen T. Hosmer* and *Samuel W. Da-* " *na*, Esquires, shall decide upon the claim made by the as- " sured upon this policy," &c. which was signed by all the petitioners.

1807.

BULKLEY
*v.*
STARR.

The award was as follows :

" A claim of *Chauncey Bulkley*, of Chatham, againt *Jo-*
" *seph Howland*, and others, of the county of New-London,
" underwriters upon a policy of insurance on the cargo of
" the Brigantine *Polly*, underwritten on the 13th day of
" April, 1798, for *three thousand dollars*, at a premium of
" *seventy-five per cent.* as also the claim on the note for
" such premium, having been referred to the subscribers,
" as may appear by indorsement on the policy. We met
" the parties, and having maturely considered the premises,
" we are of opinion, that the objections on the part of the
" underwriters are not sufficient to warrant us arbitrators to
" disallow the policy. We therefore award in and upon the
" premises, that the underwriters aforesaid pay to the as-
" sured *Chauncey Bulkley*, for a total loss on the policy, the
" sum of *three thousand dollars* insured as aforesaid, after
" first deducting therefrom the *two and an half per cent.* re-
" served by the policy, being *seventy-five dollars*, and also,
" *two thousand two hundred and fifty dollars*, being the princi-
" pal sum of the note for premium ; amounting in the whole
" to *two thousand three hundred and twenty-five dollars*, and
" leaving a balance of *six hundred and twenty-five dollars ;*
" which sum of *six hundred and twenty-five dollars* we accor-
" dingly award to be paid as aforesaid by the underwriters,
" in proportion to the sums by them respectively underwrit-
" ten on the policy. We also award, that the underwriters
" pay to said *Chauncey Bulkley*, *twenty-five dollars and thirty-*
" *three cents*, being costs of arbitration.

" *Middletown*, *July* 8th, A.D. 1799.

" *Samuel W. Dana*,

" *S. Titus Hosmer*."

The Superior Court overruled the objection to this evi-
dence, and admitted the same ; whereupon the respondent
filed a bill of exceptions.

*Daggett*, and *Huntington*, (of Middletown) for the plaintiff
in error, urged a reversal on the following grounds.

1. The bill states, that the insurance, the claim on the underwriters, the submission to arbitrament, and the payment of the sums awarded, were the *joint* acts of the complainants. The proof offered, and which was admitted by the Court, shews all these acts to have been the separate acts of the several insurers. The proof offered was not, therefore, *secundum allegata*, and ought to have been rejected.

2. The complainants allege, that they were defrauded by the testimony of the respondent before the arbitrators. This was the burden of their complaint. Now, it appears, that it was agreed by the parties, that the case should be tried on this testimony. The complainants, therefore, ought not now to be permitted to impeach it. (*a*)

3. There is nothing shewn by the complainants, which will authorize a court of chancery to set aside this award. The story is simply this—the complainants suspecting fraud, and being fully confident that proof existed somewhere, but not being able to find it, agreed to try the case upon the respondent's oath. To shew that this is not a sufficient ground for setting aside an award, the cases of *Parker* v. *Avery*, (*b*) *Anderson* v. *Coxeter*, (*c*) *Medcalfe* and *Ives* v. *Medcalfe* and *Johnston*, (*d*) *Tittenson* v. *Peat*, (*e*) *Veale* v. *Warner*, (*f*) *Lucas* v. *Wilson*, (*g*) and *Corneforth* v. *Geer*, (*h*) were cited.

4. The Court below erred upon their own principles. Having decreed the award void, on the ground of the fraud, they should have proceeded to finish the controversy, and not have left the parties to further litigation. (*i*)

(*a*) 1 *Root* 310, *Butler* v. *Catling*. *Ante, vol.* 1. *p.* 165, *Pollard* v. *Lyman*. *Peake's Ca.* 188, *Stevens* v. *Thacker*.
(*b*) *Kir.* 353.   (*c*) 1 *Stra.* 301.
(*d*) 1 *Atk.* 64.   (*e*) *Atk.* 169.
(*f*) 1 *Saund.* 327.
(*g*) 2 *Burr.* 701.
(*h*) 2 *Vern.* 705.
(*i*) *Mitf.* 105, 106.   1 *Root* 366, *Beardsly* v. *Halls*.

*Goddard*, for the defendants in error, contended,

1. That the policy, the submission to arbitrament, and the award, were stated in the bill just as they appeared in evidence. They could not, therefore, be irrelevant, on the ground of a *variance*. The only remaining question, then, on this point, is, whether these complainants could join in such an application? According to the rules of chancery, they not only could join, but might be compelled to join. They were all interested in the same question. Their object was the same. (*j*)

2. It is said, the truth of *Bulkley's* statement before the arbitrators cannot now be called in question; and *Butler* v. *Catling*, and *Pollard* v. *Lyman* are cited. But those cases are not *ad idem*. The principle established by them is, that after you have called a party into chancery to disclose facts, which you aver, in your bill, rest solely in his knowledge, or in the knowledge of him and yourself, and have obtained such disclosure, you shall not be permitted to produce other evidence relating to those facts, thus to falsify your own averments, and to trifle with his conscience. But here, the complainants did not call *Bulkley* into Court to disclose: He voluntarily offered himself as a witness, and they *assented* to his testifying without oath.

3. The record states, that the award in question was obtained by the false and fraudulent asseverations of the respondent. Here was sufficient ground for the interposition of chancery to set aside the award. (*k*)

BY THE COURT, AUSTIN and E. GOODRICH, *Assts*. dissenting,

The judgment was affirmed.

(*j*) *Mitf.* 39, 144.
(*k*) *Atk.* 63, *Medcalf and Ives.* v. *Medcalf and Johnston. Kirby* 358, *Lankton* v. *Scott.*